S04G1991. COMMON CAUSE/GEORGIA et al. v. CITY OF
ATLANTA et al.
(614 SE2d 761)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *Common Cause/Georgia v. Campbell*, 268 Ga. App. 599 (602 SE2d 333) (2004), to determine if the Court of Appeals erred in affirming the trial court's dismissal of the complaint for failure to state a claim upon which relief could be granted. Finding that the dismissal was proper, we affirm.

In 1999, the City of Atlanta ("City") opened bidding for a five-year contract to manage parking lots at then Hartsfield Atlanta International Airport. Parking Company of America ("PCOA"), which was already managing airport parking under an existing contract, submitted the low bid of $465,000 per year; its existing contract was for $697,000 per year. On November 20, 2000, the City passed a resolution that "an appropriate agreement" be entered into with PCOA (described as "the recommended operator"), and directed that the Director of the Bureau of Purchasing and Real Estate prepare such an agreement, which was to be approved as to form by the City Attorney and executed by the Mayor. The resolution specifically

---

stated that the agreement would not be binding on the City until executed by the Mayor and delivered to PCOA. Mayor Campbell, however, did not sign a new contract until January 8, 2002. In the interim, PCOA was paid at the higher rate under the existing contract, and received approximately $300,000 more than it would have under the new rate.

Common Cause and Elizabeth Hale Barnett (collectively "Common Cause") brought suit on behalf of the City and its taxpayers seeking a judgment against Campbell individually for the approximately $300,000. Campbell moved to dismiss the suit pursuant to OCGA § 9-11-12 (b) (6).[1] The trial court granted the motion and the Court of Appeals affirmed. Further facts can be found in the opinion of the Court of Appeals. See *Common Cause/Georgia*, supra.

A motion to dismiss brought under OCGA § 9-11-12 (b) (6) for failure to state a claim upon which relief can be granted should be granted only when:

> the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; [cit.] and ... the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. [Cit.]

*Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

Common Cause contends that there are two separate cognizable claims advanced in its complaint. However, relief cannot be granted on either of the advanced claims.

1. Common Cause asserts that a taxpayer citizen of a Georgia municipality has the power to sue, in the name of that municipality, an officer of the municipality, in the same manner that a corporate shareholder may sue a corporate officer in a derivative action. See OCGA § 14-2-831. As the Court of Appeals correctly noted, there is no basis in Georgia law for such an action. *Common Cause/Georgia*, supra at 600 (1). Municipal corporations are creatures of the State, see *Dept. of Transp. v. City of Atlanta*, 255 Ga. 124, 130 (3) (337 SE2d 327) (1985), and it is for the General Assembly to specify any such power to sue on the part of taxpayers.

2. This Court recognized in *Koehler v. Massell*, 229 Ga. 359 (191 SE2d 830) (1972), that, in certain circumstances, a taxpayer may pursue a claim for damages against government officials in their

---

[1] The City also moved to dismiss itself as an involuntary plaintiff, contending that there was no basis for joining it as such under OCGA § 9-11-19. This motion was also granted.

individual capacities, in a class action and on behalf of the municipality. However, the scope of that 1972 decision has been necessarily circumscribed by a 1991 amendment to the State Constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); *Cameron v. Lang*, 274 Ga. 122, 123-126 (1)-(2) (549 SE2d 341) (2001); *Gilbert v. Richardson*, 264 Ga. 744, 746-751 (2)-(4) (452 SE2d 476) (1994). The amendment applies to questions concerning the personal liability of municipal officers. See *Cameron*, supra; *Kidd v. Coates*, 271 Ga. 33 (518 SE2d 124) (1999). Under the amendment, Campbell could be liable only if he negligently performed, or failed to perform, a ministerial duty, or acted "with actual malice or with actual intent to cause injury. . . ." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); *Cameron*, supra. He had immunity for the negligent performance of a discretionary duty. *Cameron*, supra at 124 (2).

Common Cause does not assert that Campbell acted with actual malice or actual intent to cause injury, and thus, its complaint only states a cognizable claim if the duty allegedly breached was a ministerial one, see Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); *Cameron*, supra at 123 (1), which is what Common Cause asserts. "Generally, a discretionary act is one that requires the examination of facts and the exercise of considered judgment before deciding on a course of action, whereas a ministerial act is one that is a mandatory fixed obligation for which mandamus will lie to compel performance." (Citations omitted.) *Henderman v. Walton County &c. Auth.*, 271 Ga. 192, 193 (2) (515 SE2d 617) (1999).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Standard v. Hobbs*, 263 Ga. App. 873, 875 (1) (589 SE2d 634) (2003).

In the complaint, Common Cause contends that Campbell had a ministerial duty to execute a contract.[2] However, the City ordinance upon which it relies, City Code § 2-176, specifies that the Mayor is to execute a contract within 30 days of the resolution authorizing a contract, or inform the President of the City Council, in writing, the

---

[2] We note that there is no allegation that a contract was ever prepared by the Director of the Bureau of Purchasing and Real Estate for Campbell's signature, and approved as to form by the City Attorney, as specified in the resolution authorizing Campbell to execute a contract with the recommended operator.

reasons why the Mayor has not executed a contract. Clearly, on its face, the ordinance gives the Mayor the *choice* to sign or not to sign a prepared contract, and he does not have the specific duty to execute a contract. Accordingly, the failure to execute a contract is not a violation of a ministerial duty, but rather an act of discretion. Common Cause also asserts that Campbell did not report to the President of the City Council his reasons for not signing a contract within 30 days of the resolution. But, even assuming that the failure to follow through on that alternative action is considered a breach of a ministerial duty, Common Cause does not assert that any damages to the City flowed from that failure, only from the failure to pursue the other course of action available under the ordinance and execute a contract within 30 days of the resolution.

Further, prior to Campbell's execution of the contract on January 8, 2002, Common Cause could not have successfully sought a writ of mandamus to compel him to execute a contract. Campbell was certainly *authorized* to sign a contract after the November 20, 2000 resolution, but that is insufficient: " '[t]he law must not only authorize the act be done, but must require its performance.' " *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. 842, 844 (1) (583 SE2d 839) (2003). See also *Hartsfield v. Salem*, 213 Ga. 760 (1) (101 SE2d 701) (1958). While a petition for a writ of mandamus to compel Campbell to *either* execute a contract *or* inform the President of the City Council in writing why he had not done so might have been successful, it does not follow that the act of executing a contract is ministerial; there was another course of action open to Campbell.

The motion to dismiss established that the complaint disclosed that Common Cause would not be able to demonstrate the right to the requested relief. Accordingly, the motion was properly granted.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., who dissents.*

FLETCHER, Chief Justice, dissenting.

Contrary to the majority's assertion, the 1991 amendment to the Georgia Constitution has no effect on the liability of municipal corporations and municipal officers.[3] Further, the cases cited by the majority for the proposition that Campbell would have immunity for the negligent performance of a discretionary duty are inapplicable in this case, because those cases dealt with liability to a specially injured third party, rather than liability to the municipality and its taxpayers

---

[3] See *City of Thomaston v. Bridges*, 264 Ga. 4, 7 (439 SE2d 906) (1994) ("municipalities do not come within the ambit of the 1991 amendment"); *Cameron v. Lang*, 274 Ga. 122, n. 12 (549 SE2d 341) (2001).

in general.[4] Rather, this case is controlled by *Koehler v. Massell*,[5] and under the reasoning set forth in that case, Common Cause's complaint does set forth a cause of action sufficient to survive a motion to dismiss.

In *Koehler*, a taxpayer of Atlanta brought suit on behalf of all Atlanta taxpayers against the mayor and city council members of Atlanta, in their personal capacities, seeking damages for acts performed in the municipal officers' official capacities.[6] Koehler claimed that the mayor and city council had authorized payments to tort victims of city employees even though the tort victims were not entitled to payment under the rules of sovereign immunity.[7] Thus, according to the complaint, the mayor and city council distributed municipal funds that the city was not legally obligated to pay, an act for which the mayor and city council lacked authority.[8]

The factual situation in this case is remarkably similar. Common Cause, on behalf of the Atlanta taxpayers, sued the former Atlanta mayor, in his personal capacity, for acts done in his official capacity. Common Cause alleges that the mayor authorized payments to PCOA to which PCOA was not entitled, because PCOA had already agreed to provide the same services at a lower cost to the City. Thus, according to the complaint, the mayor distributed municipal funds that the City was not legally obligated to pay, an act for which the mayor lacked specific authority. Campbell has never explained why he chose to continue to authorize greater payments to PCOA than it was entitled under the new contract.

I recognize the need to limit the type of actions that may be brought against public officials for acts done in their official capacity. As we stated in *Koehler*, officials "ought not to be lightly called upon to personally respond in damages for their official legislative acts, but certainly, if it can be shown that they have, in effect, raided the public treasury to enhance their personal fortunes, they should be held personally liable."[9]

But by improperly focusing on the 1991 amendment, the majority sets an unduly rigid standard for holding public officials personally liable. Quoting the 1991 amendment, the majority states that Campbell can only be held liable for a discretionary act if he acted

---

[4] See, e.g., *Gilbert v. Richardson*, 264 Ga. 744, 752-753 (452 SE2d 476) (1994) (county police officer immune from personal liability for official discretionary acts that caused injury to third parties); *Cameron*, 274 Ga. at 125-126.

[5] 229 Ga. 359 (191 SE2d 830) (1972).

[6] Id.

[7] Id. at 359-360.

[8] Id. at 360.

[9] Id. at 366.

"with actual malice or with actual intent to cause injury."[10] The majority is correct that Common Cause must allege some wrongdoing by Campbell to survive a motion to dismiss, and prove that wrongdoing to ultimately hold Campbell liable. But because the 1991 amendment is inapplicable to this case, the standard is broader than that described by the majority, and Common Cause's complaint satisfies the correct standard.

Under *Koehler*, Common Cause must show that Campbell acted with "bad faith, malice, or fraud coupled with a showing of direct or indirect pecuniary gain to the municipal officers accruing therefrom. . . ."[11] The reasons for Campbell's decision to give PCOA more taxpayer funds than it was entitled to remain to be proven. But just as the allegations in *Koehler* were sufficient to survive a motion to dismiss, the allegations set forth in Common Cause's complaint, when viewed in the light most favorable to Common Cause, sufficiently state a claim under the lenient pleading requirements.[12]

In *Koehler*, this Court held that the complaint sufficiently stated a cause of action to survive a motion to dismiss, and the same is true in this case. Accordingly, because the majority mistakenly limits the rights of taxpayers to hold public officials accountable for the wrongful expenditure of taxpayer funds, I dissent.

DECIDED JUNE 16, 2005 —
RECONSIDERATION DENIED JUNE 30, 2005.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Sarah M. Shalf, Gordon L. Hamrick IV*, for appellants.

*Linda K. DiSantis, Lemuel H. Ward, Lord, Bissell & Brook, Michael V. Coleman, Corliss S. Lawson, Paul T. Kim*, for appellees.

*Susan M. Pruett, James F. Grubiak*, amici curiae.

---

[10] Majority opinion at 482.

[11] *Koehler*, 229 Ga. at 366.

[12] OCGA § 9-11-12 (b) (6); see also *Mitchell v. Dickey*, 226 Ga. 218, 220 (173 SE2d 695) (1970) (" 'a motion to dismiss for failure to state a claim shall not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim' ").