77217. FORNEY et al. v. PURVIS.
(378 SE2d 470)

POPE, Judge.

In January 1986, plaintiff and over one hundred other employees of Outboard Motor Corporation of Calhoun, Georgia, were laid off after they staged a labor strike. Plaintiff and all other laid-off employees were members of a labor union. Shortly after they were laid off work, the employees discontinued the strike and became eligible for unemployment insurance benefits. To facilitate the registration process of the large number of applicants, the Calhoun office of the Georgia Department of Labor (hereinafter referred to as "DOL") scheduled a mass claims registration assembly at the Armory in Calhoun on January 24, 1986. The former striking employees completed the necessary forms for filing a claim for unemployment benefits.

Many of the claimants also completed DOL Form 511, a form used in registering for the employment services of the DOL, a service which refers registrants to potential job openings. In order to be registered on the computer for employment services, an applicant must not only file Form 511 but must also obtain a personal interview by a member of the DOL staff. Because the purpose of the mass claims registration at the Armory was to register the applicants for unemployment benefits, the personal interviews necessary for registering for employment services were not conducted. It is disputed whether the applicants were informed of the necessity of reporting to the DOL office for an interview. The 511 forms turned in by these applicants were kept in a stack on the desk of one of the DOL staff members with the expectation that registration for employment services would be completed at such time as the applicant visited the DOL office.

To receive unemployment benefits, a claimant must show he is actively seeking work (OCGA § 34-8-151 (a) (3)) and that he has "registered for work" at an employment service office (OCGA § 34-8-151 (a) (1)). Those making their claims through local offices of the DOL, referred to internally as "satellite" offices, are automatically sent a

computerized Form 854 letter with their first benefit check. The letter informs the claimant that in order to continue to receive benefits, he or she must register in person for job referrals through the employment services of the DOL. According to evidence presented by appellants, individuals making their claims through those offices, referred to internally by the DOL as "itinerant" offices, are not sent the Form 854 letter because these claimants may live too far from an office offering employment services to require them to register in person. Prior to July 1985, the Calhoun office of the DOL was operated as an itinerant office. In July 1985, the Calhoun office was to have become a satellite office with its own connection to the central computer of the DOL headquarters in Atlanta. At the time of the change, because of administrative oversight, the central computer was not programmed to send Form 854 letters to unemployment benefits claimants filing through the Calhoun office. Consequently, neither the former striking employees of Outboard Motor Corporation nor any other claimants through the Calhoun office were notified by letter of the necessity for registering for employment services in person.

The record reflects that plaintiff completed a Form 511 when she registered for unemployment benefits at the Armory on January 24, 1986. Plaintiff made repeated visits to the Calhoun DOL office between February and June 10, 1986, to inquire about her unemployment benefits and to ask whether jobs were available. On each occasion, plaintiff was told that no jobs were available. The record also reflects that fifty-two former striking employees completed their registration for employment services between January and June 1986, but only thirty-three job referrals were extended to these employees during that period. We note that twenty-eight of these referrals were made in May and June, after a union official had written a letter to the DOL complaining of alleged unfair treatment of the former striking employees. Defendant Gladys Johnson, an internal investigator for DOL, conducted an investigation and concluded that 210 jobs were available through employment services from January through June for which some or all of the striking employees would have been qualified for referral.

When plaintiff visited the DOL office on June 10, 1986, to inquire about employment, an employee of DOL discovered she was not on the computerized job referral list. Plaintiff completed a second Form 511 and was properly registered for job referrals. After June 10, plaintiff was referred to several job interviews but plaintiff claims she has been denied referral to other better paying jobs which she believes have been referred to others through DOL. Plaintiff's complaint, as amended, was brought against four employees of the DOL and alleges the defendants negligently or alternatively, intentionally, deprived her of her rights guaranteed by the First and Fourteenth Amend-

ments of the United States Constitution. Essentially, plaintiff claims that defendants discriminated against her because of her affiliation with a labor union and that defendants are liable for violating her civil rights pursuant to 42 USC § 1983. Defendants appeal the trial court's denial of their motion for summary judgment.

1. Defendants first argue that they are entitled to "judgment on the pleadings" because the plaintiff's complaint does not state a cognizable claim under 42 USC § 1983. In fact, defendants did not file a motion for judgment on the pleadings but filed a motion for summary judgment, which was denied. We affirm.

Plaintiff alleges that from January to June 1986, defendant Bobby Cochran (senior employee of the Calhoun office of the DOL) improperly refused to refer her to job opportunities through the DOL's employment services because of her affiliation with a labor union. In June she was finally placed on the job service listing and was referred to several jobs. However, plaintiff further alleges that from June 1986 to the time of her amended complaint, she was improperly denied referral to better paying jobs for which she was qualified. Plaintiff alleges the remaining defendants, who are also employees of the DOL and are Cochran's superiors, were made aware of defendant Cochran's alleged illegal conduct but refused to stop him and, instead, aided in the furtherance of said conduct. Discrimination against members of a labor organization is actionable pursuant to 42 USC § 1983. *Thomas v. Younglove*, 545 F2d 1171 (9th Cir. 1976); *Orr v. Thorpe*, 427 F2d 1129 (5th Cir. 1970). Thus, to prevail on a motion for summary judgment, defendants must present uncontroverted evidence sufficient to pierce plaintiff's allegations. See *Ringer v. Lockhart*, 240 Ga. 82 (239 SE2d 349) (1977). This defendants have failed to do.

Defendants presented evidence that, due to inadvertent error, the computers serving the Calhoun office were not programmed to send the Form 854 letter to any applicants for employment benefits. Thus, defendants argue plaintiff was not discriminated against because of her union affiliation but was treated exactly as any other applicant to the Calhoun office. "Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under [42 USC § 1983]." *Silverman v. Barry*, 845 F2d 1072, 1080 (D.C. Cir. 1988). However, the failure to inform plaintiff of the necessity of registering for employment services is not the gist of plaintiff's complaint.

According to defendant Cochran, the written applications for employment services filled out by the former striking employees at the Armory were kept together in a stack on the desk of one of the DOL employees. Typically, the recipients of unemployment benefits are periodically called into the office for review of eligibility for benefits.

According to defendant Cochran, when an applicant who had registered for benefits at the mass claims assembly at the Armory reported to the DOL office, the stack of applications for employment services should have been checked so that registration for employment services could have been completed. Plaintiff's undisputed deposition testimony indicates plaintiff visited the DOL repeatedly between January and June 1986 and always asked for job referrals. However, she was never registered for employment services and was repeatedly told no jobs were available for referral. The record reflects that approximately one hundred applications for employment services were contained within the stack of applications on the desk. However, only fifty-two former OMC employees were registered for employment services between January and June 1986 and only thirty-three referrals were extended to these registrants during that period, most of which were extended only after a complaint was registered by a union official in May. Defendant Johnson concluded in the report of her investigation of said complaint that one or more of the striking employees were qualified for referral to 210 job openings referred by the DOL employment services during this period. This and other circumstantial evidence contained within the record raises an issue of fact concerning whether defendant Cochran's failure to register and refer the former striking employees was the result of anti-union animus. See *Missouri Nat. Educ. Assn. v. New Madrid County &c. School Dist.*, 810 F2d 164, 167 (8th Cir. 1987); *N.L.R.B. v. Wal-Mart Stores*, 488 F2d 114, 116-117 (8th Cir. 1973). The remaining defendants were made aware of these facts and circumstances as a result of an internal departmental investigation but apparently took no steps to correct the situation. Where a superior officer is cognizant of conflicts and discrepancies in evidence, but ignores them or fails to act on the information, then a jury may infer the officer implicitly approved or authorized the unconstitutional conduct of the offending officer. *Bell v. City of Milwaukee*, 746 F2d 1205 (31, 33) (7th Cir. 1984). We conclude that defendants' motion for summary judgment was properly denied.

2. Defendants next argue that they are entitled to judgment as a matter of law because they are protected by the doctrine of official qualified immunity. It is uncontested that defendants' immunity defense is governed by federal law. See *Davis v. City of Roswell*, 250 Ga. 8 (295 SE2d 317) (1982) cert. denied, 475 U. S. 1122 (106 SC 1640, 90 LE2d 185) (1983). According to the United States Supreme Court, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (102 SC 2727, 73 LE2d 396) (1982). Thus, the

test for determining whether a defendant is protected from suit by the doctrine of qualified immunity is the objective reasonableness of the defendant's conduct "as measured by reference to clearly established law . . . ." Id. "[T]he appealable issue [on a claim for qualified immunity] is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U. S. 511, 528 n. 9 (105 SC 2806, 86 LE2d 411) (1985). On a motion for summary judgment, if the applicable law was clearly established at the time the defendant acted, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U. S. at 818-819. The courts have long established that First Amendment protection of freedom of speech and association extends to membership in labor unions. See, e.g., *Thomas v. Collins*, 323 U. S. 516 (65 SC 315, 89 LE 430) (1945). If, as plaintiff alleges, defendants denied her equal protection of the law because of her union membership, then their conduct was violative of clearly established law and would not be protected by qualified immunity from suit.

Defendants' reliance upon the holding in *Childress v. SBA*, 825 F2d 1550 (11th Cir. 1987), is misplaced. In *Childress*, the Eleventh Circuit Court of Appeals held that to withstand the defense of qualified immunity, the alleged violation must be of constitutional rights, not merely regulatory rules. In *Childress*, the court ruled that the plaintiff had been afforded due process in the denial of a government loan, even though the federal employees administering the loan program did not strictly comply with federal regulations requiring written notice of denial. In the case at hand, plaintiff alleges a denial of constitutional rights, and not merely a failure to follow departmental rules or procedures. As discussed in Division 1, above, defendants have not pierced these allegations. Therefore, the defendants are not entitled to qualified immunity from plaintiff's claims.

3. In addition to the Section 1983 claim, plaintiff's amended complaint also alleges common law negligence against the defendants. Defendants argue they are entitled to judgment as a matter of law as to plaintiff's state law claim pursuant to the doctrine of quasi-judicial immunity. The record shows that at the time of the alleged acts, the Department of Labor was insured by a comprehensive general liability policy which expressly covers the negligent acts of the department's employees while acting in their official capacities. "Because negligence in performing official acts is covered by this insurance, these officers' official immunity is waived to the extent to which this coverage will pay for the claims asserted." *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 303 (357 SE2d 569) (1987); see also *Swofford v. Cooper*, 184 Ga. App. 50 (5) (360 SE2d 624) (1987), aff'd 258

Ga. 143 (368 SE2d 518) (1988). Thus, summary judgment was also properly denied in regard to plaintiff's negligence claim.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED JANUARY 13, 1989 —
REHEARING DENIED FEBRUARY 7, 1989.

Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, Wayne P. Yancey, Senior Assistant Attorney General, Rita J. Llop, Assistant Attorney General, for appellants.

Harold D. Corlew, Walbert & Hermann, Paul D. Hermann, David H. Bedingfield, for appellee.