A96A0880. GARDNER v. ROGERS et al.
(480 SE2d 217)

POPE, Presiding Judge.

Plaintiff Leatrice Gardner sued defendant Ken Rogers, who is a Richmond County Sheriff's deputy, for assault, battery, malicious

abuse of process and civil rights violations, all arising out of Rogers' alleged use of excessive force against plaintiff during an arrest. Plaintiff also sued defendant Charles B. Webster, who is the Richmond County Sheriff, for having a policy in place that condoned the violation of plaintiff's civil rights. The trial court granted summary judgment to Rogers and Webster, and plaintiff appeals. We affirm in part and reverse in part.

Construed most favorably to plaintiff, the evidence shows that Rogers was dispatched to the scene of an alleged simple assault. When he arrived, Tonya Ancrum informed Rogers that an unidentified woman who lived in a nearby house had threatened Ancrum with a knife. Ancrum also indicated that the woman had threatened Ancrum's 11-year-old sister and that Ancrum wanted to take out a warrant on this woman. Consequently, Ancrum, Rogers and another deputy sheriff went to the woman's house to listen to her side of the story. When they arrived at the house, the woman, who was later identified as plaintiff, opened the door. Rogers, who appeared angry at plaintiff, told plaintiff what Ancrum had reported to him and asked for plaintiff's version of events.

Plaintiff told Rogers that earlier in the day plaintiff's daughter had been arguing with several neighborhood children at the edge of plaintiff's yard. Plaintiff instructed her daughter to come in the house, and she told the other children to get out of her yard. Shortly thereafter, Ancrum came to plaintiff's house and claimed that plaintiff had hit Ancrum's daughter. According to plaintiff, Ancrum threatened to shoot plaintiff. Plaintiff, who denied threatening any child, closed the door in Ancrum's face and demanded Ancrum leave plaintiff's property. Plaintiff also denied ever threatening Ancrum with a knife.

After complying with Rogers' request for information, plaintiff asked Rogers if plaintiff was under arrest and if Rogers had a warrant. Rogers responded that no one was being arrested and that he had no warrant. At that point, plaintiff asked Rogers and everyone else to leave her property. Plaintiff then began to close her door. Rogers stopped the door with his foot, but did not inform plaintiff that he had more questions. Instead, Rogers stated that the property was his and that he had a right to be there. Plaintiff again asked whether Rogers had a warrant and whether she was under arrest. When Rogers told plaintiff no, plaintiff again attempted to close her door. Rogers said "try me on for size," reaching through the doorway and placing a choke-hold on plaintiff's neck. Then he pushed the door open and drove plaintiff against some furniture and beat her. Rogers twisted plaintiff's arm behind her back telling her that she was only five seconds away from having her arm broken. According to plaintiff, she had no physical contact with Rogers prior to the time he first

applied the choke-hold. Subsequently, Rogers took plaintiff to his patrol car, where he allegedly hit plaintiff's head on the car. Rogers charged plaintiff with simple assault upon a police officer.

Instead of immediately taking plaintiff to the sheriff's department, Rogers drove to a school parking lot where he met Lieutenant Williams. Rogers and Williams discussed the situation in plaintiff's presence, and Williams advised Rogers concerning how the situation should be handled. Williams told Rogers to charge plaintiff with anything Rogers could think of.

Sometime shortly after her arrest, plaintiff went to the hospital complaining of shoulder and neck pain. After being treated and having her arm put in a sling, she was released, but she remained in pain for an extended period of time.

Approximately one week after plaintiff's arrest, Ancrum took out a warrant against plaintiff for assault. Plaintiff was tried before a jury on that charge and on the simple battery charge brought by Rogers. The jury acquitted plaintiff of assault, but was unable to reach a decision on the simple battery charge. Thereafter, the State decided not to retry plaintiff on that charge.

1. In his motion for summary judgment, Rogers contended that he was entitled to qualified immunity regarding plaintiff's claim that her civil rights had been violated. We cannot agree. While it is true that police officers performing discretionary functions are generally entitled to qualified immunity shielding them from personal liability under 42 USC § 1983, such immunity exists only "insofar as [the officer's] conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 801 (3) (a) (102 SC 2727, 73 LE2d 396) (1982); *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993). "[T]he test for determining whether a defendant is protected from suit by the doctrine of qualified immunity is the objective reasonableness of the defendant's conduct as measured by reference to clearly established law. . . . On a motion for summary judgment, if the applicable law was clearly established at the time the defendant acted, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." (Citation and punctuation omitted.) *Forney v. Purvis*, 190 Ga. App. 192, 195-196 (2) (378 SE2d 470) (1989).

In this case, plaintiff's excessive force claim is premised upon a clearly established right of which Rogers should have known, namely the right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution. In determining whether Rogers clearly violated plaintiff's Fourth Amendment rights, and thus, whether or not he is entitled to qualified immunity, however, we must examine his actions in light of the

Fourth Amendment's objective reasonableness test. See *Bell*, 210 Ga. App. at 374-375; *Graham v. Connor*, 490 U. S. 386 (109 SC 1865, 104 LE2d 443) (1989). Under that test, the "question is whether [an officer's] actions are 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [any] underlying intent or motivation [on the officer's part]." *Graham*, 490 U. S. at 397.

Applying the above test to the facts in this case and construing those facts most favorably to plaintiff as the party opposing summary judgment, we are compelled to conclude that Rogers' use of force against plaintiff was not objectively reasonable. Contrary to Rogers' assertion, the facts, when construed in plaintiff's favor, do not demonstrate that Rogers had probable cause to arrest plaintiff for either misdemeanor obstruction or battery before he forcibly seized plaintiff. And even if he did have cause to arrest her, he certainly did not have cause to use the degree of force he allegedly did. Instead, the evidence so construed shows that plaintiff had cooperated with Rogers' investigation, and that plaintiff did not ask Rogers to leave her property and attempt to close her door until after it appeared that Rogers had no more questions. According to plaintiff, Rogers never informed plaintiff that his investigation was not complete, even after plaintiff attempted to close her door. Moreover, both before and during her attempt to close the door, Rogers informed plaintiff that plaintiff was not under arrest and that Rogers had no warrant. Under such circumstances, plaintiff's actions were justified.

Under the facts as stated, it would have been apparent to any reasonable officer in Rogers' position that force was not authorized and that Rogers' use of force against plaintiff was excessive and illegal. Accordingly, Rogers is not entitled to qualified immunity. *Forney*, 190 Ga. App. at 196 (2). Therefore the trial court erroneously granted summary judgment to Rogers on this ground.

2. The trial court also erred in granting summary judgment to both Rogers and Webster on plaintiff's civil rights claim on the ground that plaintiff could not demonstrate that she had suffered "significant injury" as the result of Rogers' actions. As acknowledged by both Rogers and Webster, the United States Supreme Court's holding in *Graham* does not require that a plaintiff show significant injury as an essential ingredient to a Fourth Amendment excessive force claim. And, recent federal decisions specifically have negated any such requirement. See *Harper v. Harris County, Texas*, 21 F3d 597, 600 (13) (5th Cir. 1994); *Knight v. Caldwell*, 970 F2d 1430, 1432 (3) (5th Cir. 1992); *Titran v. Ackman*, 893 F2d 145, 147, n. ** (7th Cir. 1990); see also *Hudson v. McMillian*, 503 U. S. 1 (112 SC 995, 117 LE2d 156) (1992) (abandoning the significant injury requirement in claims for excessive use of force arising in the context of the Eighth

Amendment).

3. Sheriff Webster, nevertheless, was entitled to summary judgment regarding plaintiff's civil rights claim against him because plaintiff has failed to present evidence that Rogers' actions were effected pursuant to a direct order from Webster or in accordance with an intentional custom or policy instituted by Webster. See *Springfield, Massachusetts v. Kibbe*, 480 U. S. 257, 267 (107 SC 1114, 94 LE2d 293) (1987); *Gwinnett County v. King*, 218 Ga. App. 800, 802 (3) (463 SE2d 511) (1995); *Tillman v. Mastin*, 216 Ga. App. 3, 4 (453 SE2d 85) (1995). Such a showing was necessary in light of the affidavit Webster filed denying the existence of such an order, policy or procedure. Therefore the trial court did not err in dismissing plaintiff's civil rights claim against Webster.

4. The trial court did, however, err in dismissing plaintiff's state law claims against Rogers for assault and battery. See OCGA § 51-1-14. Based on our holding in Division 1, a jury could conclude that Rogers' conduct toward plaintiff was not justified and that Rogers' conduct placed plaintiff in fear of an illegal, unauthorized physical contact. *Capitol T. V. Svc. v. Derrick*, 163 Ga. App. 65 (1) (293 SE2d 724) (1982). A jury could further conclude that Rogers carried out the illegal contact and in doing so committed a battery upon plaintiff. *Jarrett v. Butts*, 190 Ga. App. 703, 705 (4) (379 SE2d 583) (1989). Contrary to Rogers' assertion, he is not entitled to state official immunity as a matter of law with regard to plaintiff's claims for assault and battery because the jury could conclude that his actions were intentional and carried out with wilfulness, malice or corruption, in violation of a known right. See *Hennessy v. Webb*, 245 Ga. 329, 330-331 (264 SE2d 878) (1980); *Doe v. Howell*, 212 Ga. App. 305, 306 (2) (441 SE2d 767) (1994).

5. Finally, we conclude that the trial court did not err in granting summary judgment to Rogers with regard to plaintiff's state law claim of malicious abuse of process. Claims of malicious abuse of process are applicable only where civil process has been improperly instigated, not criminal process. *Gillilan v. Still*, 199 Ga. App. 118, 119 (1) (404 SE2d 445) (1991).

In light of the above, we affirm the trial court's grant of summary judgment to Webster. We also affirm the grant of summary judgment to Rogers on plaintiff's malicious abuse of process claim, but we reverse the grant of summary judgment to Rogers on plaintiff's claims of state law assault and battery, and plaintiff's civil rights claim based on excessive use of force.

*Judgment affirmed in part and reversed in part. Andrews and Smith, JJ., concur.*

DECIDED DECEMBER 20, 1996 —

*Ellis R. Garnett*, for appellant.

*Burnside, Wall, Daniel, Ellison & Revell, Thomas R. Burnside III, James W. Ellison*, for appellees.