[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11728
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00584-TWT


ROSA HAMPTON,
individually, and as Administrator of the
Estate of Maurice Hampton, and on behalf of
the minor children of the Estate of Maurice Hampton,

Plaintiff-Appellee,


versus


THOMAS ATZERT, JR.,
individually, and in his capacity as a City
of Atlanta Police Officer,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 4, 2014)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Thomas Atzert, Jr., an Atlanta Police Department officer, appeals the district court's denial of his motion for summary judgment. This case arose from a 42 U.S.C. § 1983 suit filed by Rosa Hampton, individually and as the Administrator of the Estate of Maurice Hampton, and on behalf of the minor children of the estate of Maurice Hampton (hereinafter "Hampton"), against the City of Atlanta and Officer Atzert. Hampton sued for use of excessive force in violation of the Fourth Amendment and violations of state law in connection with the June 30, 2011, fatal shooting of Maurice Hampton. The district court granted summary judgment to the City of Atlanta, but denied Officer Atzert's motion for summary judgment. On appeal of that denial, Atzert raises three issues: (1) whether his use of force was reasonable under the Fourth Amendment; (2) whether he is entitled to qualified immunity on the § 1983 claim; and (3) whether he is entitled to official immunity on the state law claims. Atzert also challenges the district court's consideration of the deposition testimony of an eyewitness bystander. This deposition was in the record but not in Atzert's unopposed statement of undisputed material facts. After careful consideration, we affirm the district court.

I.

To begin, we address whether the district court improperly relied on

2

information contained in the record but not in Atzert's statement of undisputed material facts—namely, the deposition of Carold Williams, the sole eyewitness bystander.  We review a court's application of local rules for abuse of discretion. Reese v. Herbert, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008).  Under Northern District of Georgia Local Rule 56.1(B), a district court will accept each of the movant's facts admitted at summary judgment unless the nonmovant directly refutes these facts with concise responses.[1]  Hampton filed no response to Atzert's statement of undisputed facts as Rule 56.1(B) requires, but the district court nonetheless relied heavily on a deposition not contained in Atzert's undisputed facts when it denied Atzert's summary judgment motion.  We find no error in this reliance.

In Reese, we stated that a district court has "broad discretion" to "overlook [a nonmoving party's] noncompliance with Local Rule 56.1" and to look beyond the confines of a statement of undisputed facts on summary judgment.  527 F.3d at 1270.  In fact, we favorably cited our sister circuit's holding—directly on point— that "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an

---

[1] Local Rule 56.1(B)(2)(a)(2) reads: "[t]his Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1)."

3

assiduous review of the record even where one of the parties has failed to file such a statement."  Id. at 1271 (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)).  This holding comports with our general practice of giving "great deference to a district court's interpretation of its local rules."  Clark v. Hous. Auth. of City of Alma, 971 F.2d 723, 727 (11th Cir. 1992).  Based on this precedent, the district court did not abuse its discretion by looking to Williams's deposition in making its summary judgment ruling.

## II.

We review de novo a district court's denial of summary judgment.  Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir. 2011).  Summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In viewing this evidence, the court draws all reasonable inferences in the light most favorable to the nonmoving party, and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version."  Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc).

Here, Atzert argues that the district court erred in denying his motion for summary judgment because there are no genuine issues of material fact as to (1) whether he unreasonably seized Hampton in violation of Hampton's Fourth Amendment rights through the use of excessive deadly force; (2) whether he was

4

entitled to qualified immunity on Hampton's federal claims; and (3) whether he was entitled to official immunity on Hampton's state law claims.  We affirm the district court on all three points.

## A.

First, there are genuine issues of material fact about whether Atzert unreasonably seized Hampton in violation of the Fourth Amendment.  The Fourth Amendment's freedom from unreasonable seizures includes the right to be free from excessive force during an arrest.  Graham v. Connor, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 1871 (1989).  According to the Supreme Court, "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Id. at 396, 109 S. Ct. at 1871 (quotation marks omitted).  The Court has held that the use of deadly force "to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable."  Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985).  "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  Id. at 11, 105 S. Ct. at 1701.  As such, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead."  Id. at 11, 105 S. Ct. at

5

1701.  However, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Id. at 11–12, 105 S. Ct. at 1701.  Factors we must consider in deciding whether the use of deadly force was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 109 S. Ct. at 1872.

Viewing the record in the light most favorable to Hampton, there are genuine issues of material fact about whether a reasonable officer in Atzert's position could have believed that Hampton posed an immediate threat to Atzert or others.  According to Williams—the only eyewitness other than Atzert himself—after an initial chase, Atzert managed to restrain Hampton "facedown [sic] . . . in the[] weeds."  Williams Dep. 24, Nov. 8, 2013, ECF No. 41-5.  Atzert then had Hampton stand and began to walk him down a road.  Id. at 25.  As they walked, Williams saw Hampton "br[ea]k loose" from Atzert and "start[] running."  Id. at 26.  According to Williams, "when [Hampton] started to run, the officer pulled his weapon and with both hands aimed and fired" into Hampton.  Id.  Williams explicitly affirmed that he never saw "Mr. Hampton with any weapons" including

"any baton." Id. at 31.  Also, the district court found no evidence in the record that Atzert warned Hampton before shooting him.  Under this version of events, Atzert could not have reasonably believed that Hampton was an immediate threat.  At most, Atzert might have believed Hampton would escape, and, on these facts, the harm of "failing to apprehend him does not justify the use of deadly force to do so." Garner, 471 U.S. at 11, 105 S. Ct. at 1701.

Officer Atzert, of course, tells a different story.  Among other things, he says Hampton resisted arrest throughout their encounter, committed physical violence against Atzert that resulted in serious injury, and—most importantly—was holding a dangerous police baton at the time Atzert shot him.  But this type of factual dispute must be resolved by a trier of fact, rather than by a judge at the summary judgment stage.  We are certainly mindful that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97, 109 S. Ct. at 1872.  But even given the deference ordinarily granted to officers in the field, the record does not allow us to rule as a matter of law that Atzert acted reasonably.  Indeed, almost all of Atzert's analysis on appeal relies on the assumption that Hampton was holding a police baton.  This version of events is plainly disputed.  The district court therefore properly denied

7

Atzert's motion for summary judgment.

B.

There are also genuine issues of material fact about whether Atzert is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from "liability for civil damages." Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696 (1999). Under the Supreme Court's qualified immunity standard, even if "a violation could be made out on a favorable view of the parties' submissions," a court must also ask whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). In excessive-force cases, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156. Just as with any other disputed issue, "if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial." Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002).

The version of the record facts most favorable to Hampton would make it clear to a reasonable officer in Atzert's shoes that his conduct was unlawful. One way of showing that Atzert violated a clearly established right is by pointing to a

8

"broader, clearly established principle [that] should control the novel facts of this situation." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). And the Supreme Court has made clear that "[w]here [a] suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." Garner, 471 U.S. at 11, 105 S. Ct. at 1701. In other words, it is clearly established that killing a person merely to prevent his escape is not justifiable. Assuming, as we must, that Hampton held no weapon, received no warning from Atzert, and was running away from Atzert while partially restrained when he was shot, "it would be clear to a reasonable officer that [shooting Hampton] was unlawful in the situation [Atzert] confronted." Saucier, 533 U.S. at 202, 121 S. Ct. at 2156. Thus, the district court correctly held that it was "possible that Atzert was not justified in using deadly force to prevent Hampton's escape." Op. & Order 11, ECF No. 45 (emphasis added).

## C.

Finally, there are genuine issues of material fact about whether Atzert is entitled to official immunity from the state-law claims against him. In Georgia, "[p]ublic agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure." Taylor v. Waldo, 709 S.E.2d 276, 281 (Ga. Ct. App. 2011) (emphasis added). The Georgia Supreme Court has addressed

the "intent to injure" prong specifically in the context of an officer's use of deadly force:

> [A]n officer who, in the performance of his official duties, shoots another in self-defense is shielded from tort liability by the doctrine of official immunity. One who acts in self-defense does not act with the tortious intent to harm another, but does so for the non-tortious purpose of defending himself. OCGA § 51-11-1. Because an officer does not lose the right to defend himself when he acts in his official capacity, we hold that an injurious work-related act committed by an officer, but justified by self-defense, comes within the scope of official immunity. Thus, if [an officer] shot [a person] intentionally and without justification, then [the officer] acted solely with the tortious 'actual intent to cause injury.' On the other hand, if [an officer] shot [a person] in self-defense, then [the officer] had no actual tortious intent to harm [the person], but acted only with the justifiable intent which occurs in every case of self-defense, which is to use such force as is reasonably believed to be necessary to prevent death or great bodily injury to [himself] or the commission of a forcible felony.

Kidd v. Coates, 271 Ga. 33, 33 (1999) (citation omitted).

Here, there is a genuine dispute as to whether Officer Atzert used "such force as is reasonably believed to be necessary to prevent death or great bodily injury . . . or the commission of a forcible felony." Id. Viewing the evidence in the light most favorable to Hampton, the district court did not err in denying summary judgment on the official immunity issue.

III.

For these reasons, we **AFFIRM** the district court.

10